IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GARY R. DEMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:16cv222-WC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[2]**

**I.   INTRODUCTION**

Gary R. Dement ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*., on August 21, 2013, alleging disability beginning on March 20, 2012. Plaintiff's application for benefits was denied at the initial administrative level on December 27, 2013. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff had not been under a disability, as defined in the Social Security Act, from March 20, 2012, through the date of the decision

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Various amendments to 20 C.F.R. § 404.1529(c)(3) became effective on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416) (establishing amendments' effective date). Because the ALJ rendered his decision before March 27, 2017, he used the earlier version of § 404.1529(c)(3). For purposes of this appeal, the court reviews the ALJ's decision under the prior version of the regulation.

on August 25, 2015. Plaintiff appealed to the Appeals Council on September 11, 2015, and while the appeal was pending, Plaintiff presented additional evidence for the Appeals Council's review. The Appeals Council denied review on February 24, 2016. Accordingly, the ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[3] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 13); Def.'s Consent to Jurisdiction (Doc. 14). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner and REMANDS the matter for further proceedings.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a prima facie case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at

---

[5] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

3

1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its

---

[6] *See* 20 C.F.R. pt. 404 Subpt. P, app. 2.

entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 57 years old on the date of the hearing before the ALJ, and he had completed high school, with three years of college. Tr. 52-53. His prior work was as a state trooper with the Department of Public Safety, Tr. 53, a salesperson at Harley Davidson motorcycle, Tr. 54, and a substitute teacher with the Elmore County Board of Education, Tr. 54. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since March 20, 2012, the alleged onset date." Tr. 23. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "status post anterior discectomy and fusion, secondary to severe chronic desiccation with osteophytes impinging on the foramina, cervical spine; status post foraminotomy, cervical spine; total arthroplasty, left knee; status post hemi-arthroplasty, left shoulder; mild diffuse sensorimotor peripheral neuropathy, extremities; and degenerative disc diseases, disc bulge, lumbar spine, with reported radiculopathy[.]" Tr. 23-24. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that

5

meets or medically equals the severity of one of the impairments listed" in the Social Security Act. Tr. 29. Next, the ALJ articulated Plaintiff's RFC, stating Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant cannot climb ladders, ropes, poles or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel and crouch. The claimant cannot crawl. The claimant can occasionally use his upper extremities for pushing, pulling and reaching overhead. The claimant can frequently use his lower extremities for pushing, pulling and the operation of foot controls. The claimant can occasionally work in humidity, wetness, and extreme temperatures. However, the claimant cannot work in bright sunlight and is better suited for indoor work activity. The claimant can occasionally work in dusts, gases, odors and fumes. The claimant can occasionally work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant cannot work in hazardous environments such as a construction zone or involvement in law enforcement duties. The claimant can occasionally work with hazardous operating machinery. The claimant can occasionally operate motorized vehicles. The claimant can occasionally work while exposed to vibration.

Tr. 30. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is capable of performing past relevant work as a parts clerk, general merchandise sales, and as a substitute teacher. Tr. 39. The ALJ determined that "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity[.]" Tr. 39. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 20, 2012, through the date of this decision[.]" Tr. 40.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for the court to consider in its review of the Commissioner's decision. First, Plaintiff argues "the Appeals Council erred in failing to remand this matter to the ALJ on the basis of new and material evidence." Doc. 16 at 1. Second, Plaintiff argues "the ALJ erred in failing to give appropriate weight to the opinions of [Plaintiff's] treating physicians." *Id*. Because the second issue is dispositive, the undersigned will address it first.

## V. DISCUSSION

### A. Whether the ALJ Erred in Failing to Give Appropriate Weight to the Opinions of Plaintiff's Treating Physicians.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard

7

a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41.

Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," a court will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

Plaintiff argues that the ALJ committed reversible error by giving little weight to the opinions of Plaintiff's treating physicians. Particularly, Plaintiff challenges the ALJ's rejection of the opinions of Dr. Tomeka Russell and Dr. F. Donovan Kendrick. Because the undersigned agrees with Plaintiff that the ALJ did not articulate good cause to discount Dr. Kendrick's opinion and that the case should be remanded to the ALJ upon that basis, the undersigned will not address whether there was good cause to discount the medical source statements provided by Dr. Russell.

On March 11, 2014, Dr. Kendrick concluded that Plaintiff would not be able to hold meaningful employment because of severe degenerative disease in his lower back. Tr. 778. In reaching this opinion, Dr. Kendrick noted that Plaintiff's description of pain with activity was consistent with the objective medical evidence, particularly Plaintiff's MRI. Tr. 778. Specifically, Dr. Kendrick noted that Plaintiff's "lumbar MRI shows degenerative changes at each level of the lumbar spine[,]" and that "[t]here is profound degenerative joint disease[,] particularly in the lower lumbar segments." Tr. 777. Further, Dr. Kendrick stated that there was not a surgical solution for Plaintiff's lower back condition. Tr. 778. However, Dr. Kendrick did determine that surgery would be beneficial for Plaintiff's neck condition, and Plaintiff indicated his wish to proceed. Tr. 775, 778. Plaintiff underwent surgery for his neck and cervical spine on April 16, 2014. Tr. 770. During his postoperative review, Dr. Kendrick noted Plaintiff's history prior to the surgery:

> [Plaintiff] has pain in his neck with radiation to his left arm and some down his right, as well as low back pain with radiation down both legs. He is unable to stand because of severe pain radiating down both legs. . . . Lumbar MRI was performed showing degenerative changes at essentially every level of the lumbar spine with profound degenerative joint disease, particularly at the lower lumbar segments. There was also a disc bulge at L3-L4 on the left. Due to extensive severe lumbar degenerative disease at multiple levels, surgery was not recommended; however, with the cervical spine and radicular pain, the findings of nerve root compression and cervical nonunion, surgery was discussed, and [Plaintiff] wished to proceed.

Tr. 771.

The ALJ afforded Dr. Kendrick's opinion that Plaintiff is unable to hold meaningful employment "little weight" for several reasons. First, the ALJ discounted the opinion because it "was given prior to [Plaintiff's] scheduled surgery and the record is void of

9

follow-up from Dr. Kendrick, beyond the claimant's release date from the hospital." Tr. 38. Second, the ALJ noted "the claimant's work activities leading up to the surgery consisted of being a teacher and the more stringent duties of a bouncer." Tr. 38. Third, the ALJ stated that evidence in the record subsequent to March 11, 2014, "belied Dr. Kendrick's comment." Tr. 38. Fourth, the ALJ noted that Plaintiff "advanced the findings of his degenerative joint disease of the lumbar spine for consideration of a VA pension/disability[,]" but the VA concluded that a "[s]ervice connection for degenerative joint disease, lumbar spine is denied." Tr. 38, 1317. Fifth, the ALJ stated that "merely conjecture allows Dr. [Jayesh] Patel's statement of the claimant's work activity at his October 27, 2014[,] visit to mean he was currently engaged in his now sustained employment as a substitute teacher[,]" suggesting, again, that Dr. Kendrick's opinion is not supported by the evidence in the record. Tr. 39. The undersigned will examine each proffered reason, in turn.

First, the undersigned turns to the ALJ's reasoning that Dr. Kendrick's opinion was given *prior* to the surgery of Plaintiff, and that no post-surgery records exist with Dr. Kendrick. The ALJ's reasoning is problematic because the surgery performed by Dr. Kendrick was related to Plaintiff's neck while Dr. Kendrick's conclusion that Plaintiff could not hold meaningful employment was related to Plaintiff's lower back. Dr. Kendrick's treatment notes indicate that, at the time Plaintiff was recommended for neck surgery, there was *no surgical solution* for Plaintiff's lower back pain. Tr. 777. Because of the pain and the inability to operate on Plaintiff's lower back (due to Plaintiff's severe degenerative disc disease), Dr. Kendrick opined that he "did not think the claimant was

10

going to be able to hold meaningful employment." Tr. 778. While such a conclusion regarding Plaintiff's ability to work is reserved for the ALJ and not for Dr. Kendrick, the undersigned does not find that the ALJ's stated reason for discounting Dr. Kendrick's opinion—*i.e.*, that the opinion was given prior to Plaintiff's neck surgery and that no post-operative records exist with Dr. Kendrick—establishes good cause to discount the opinion of this treating physician. Indeed, the reasoning simply does not make sense considering that the basis for Dr. Kendrick's opinion was Plaintiff's lower back, which was inoperable, and not Plaintiff's neck, which was amenable to surgery.

Second, the undersigned addresses the ALJ's reasoning that Plaintiff's previous employment as a bouncer and as a teacher provides good cause to discount the opinion of Dr. Kendrick. Dr. Kendrick treated Plaintiff from February 2014 through April 2014. Tr. 769-781. He gave his opinion that Plaintiff could not hold meaningful employment on March 11, 2014. Tr. 778. According to the evidence and Plaintiff's testimony before the ALJ, Plaintiff was a part-time teacher until the end of the 2013 calendar year. Tr. 23, 54-55. As for Plaintiff's work as a bouncer, it appears that Plaintiff was continuing to work in this capacity at least until July 25, 2013. Tr. 464. However, these positions were held by Plaintiff a minimum of several months *prior* to Dr. Kendrick's opinion. If Plaintiff was continuing his work as a substitute teacher and/or as a bouncer at the time Dr. Kendrick made his assessment, the ALJ's reasoning might stand. However, because the opinion was given at least two-and-a-half months *after* Plaintiff was no longer employed in any capacity, the undersigned cannot conclude that the ALJ's reason for discounting Dr. Kendrick's opinion was based in good cause.

Third, the ALJ reasoned that Dr. Kendrick's opinion should be discounted because evidence in the record after March 11, 2014, belied his conclusion. The evidence after that date cited by the ALJ relating to Plaintiff's spinal issues includes the following:

- May 20, 2014 – Plaintiff sought treatment from Dr. Jayesh Patel with the VA. Tr. 820. Dr. Patel noted that Plaintiff was ambulatory and stated that he felt better after his neck surgery, and had no new complaints. Tr. 863-64. Dr. Patel noted that Plaintiff suffered from chronic lumbar spine degenerative disc disease, which surgery could not treat. Tr. 864.

- May 21, 2014 – Plaintiff visited Dr. Tomeka Russell for a follow-up after his neck surgery. Tr. 1285. He stated that his arms and shoulders were better, but advised that he was told he could not work any longer. Tr. 1285. Plaintiff reported to Dr. Russell that Dr. Kendrick prescribed Percoset for his pain, and that he was taking it twice a day, and three times per day if his pain was severe. Tr. 1285. Dr. Russell found Plaintiff positive for back pain, but with a normal gait. Tr. 1285, 1286. She prescribed Oxycodone/Acetaminophen. Tr. 1287.

- May 29, 2014 – Plaintiff reported to the VA for a compensation and pension examination. Tr. 237-243. That examination did not lead to an increase in Plaintiff's compensation, and the examining doctor concluded that Plaintiff's knee and lower leg condition did not impact his ability to work. Tr. 237.

- October 13, 2014 – Plaintiff returned to Dr. Russell needing a refill of his Percoset. Tr. 1282. He reported that he continued to have neck and back pain. Tr. 1282. Dr. Russell found that Plaintiff was in moderate pain, and that his gait was affected by a right leg limp. Tr. 1283. Plaintiff had pain associated with range of motion in both his neck and back. Tr. 1283.

- October 27, 2014 – Plaintiff returned to Dr. Patel. Tr. 820. He rated his lower back pain as a seven. Tr. 826. The nurse noted that he was ambulatory with the assistance of a cane. Tr. 826. Dr. Patel removed "chronic lumbar degenerative disc disease" from Plaintiff's problem list. Tr. 820.

- November 5, 2014 – Plaintiff returned to Dr. Russell. Tr. 1280. Dr. Russell found Plaintiff negative for back pain, arthralgias, and myalgias. Tr. 1280. She completed a medical source statement in which she opined that Plaintiff could sit and stand for less than two hours in an eight-hour workday; that Plaintiff would require breaks every thirty minutes to one hour, and that such breaks would last approximately ten to fifteen minutes; that Plaintiff's legs should be elevated for seventy percent of a

12

workday at a sedentary job; that Plaintiff could occasionally carry up to ten pounds but never twenty or more; that Plaintiff could spend no more than sixty percent of the day grasping, turning, or twisting objects and no more than eighty percent of the day performing fine manipulations; that Plaintiff could never bend, twist, crouch, or climb ladders; and that Plaintiff would likely be absent from work more than twice a month. Tr. 1260-63.

Having reviewed this evidence, the undersigned is perplexed by exactly what the ALJ meant when he stated that the evidence post March 11, 2014, belied Dr. Kendrick's conclusion. Of course, there are snippets of information that seemingly minimize Plaintiff's intensity of pain—*i.e.*, the November 5 visit to Dr. Russell where Plaintiff was found to be negative for back pain; the October 13 visit to Dr. Russell noting Plaintiff was in moderate pain; and the October 27 visit to Dr. Patel in which he no longer listed "chronic lumbar degenerative disc disease" as an ailment for Plaintiff. However, the undersigned cannot find any records to indicate that Plaintiff's back condition was cured or controlled with medication, and there are multiple records giving support to Dr. Kendrick's opinion— *i.e.*, notations that Plaintiff suffered from chronic lumbar spine degenerative disc disease which surgery could not treat; Plaintiff's use of pain medication; Plaintiff's positive reports of back pain and problems with his gate; and Plaintiff's use of a cane for ambulation. Accordingly, the undersigned cannot conclude that the ALJ's reason for discounting Dr. Kendrick's opinion was based on good cause, particularly considering the ALJ's failure to clearly articulate the evidence upon which the discount was based.

Fourth, the ALJ reasoned that Dr. Kendrick's opinion should be discounted because Plaintiff "advanced [to the VA] the findings of his degenerative joint disease of the lumbar spine for consideration of a VA pension/disability[,]" but the VA concluded that a

13

"[s]ervice connection for degenerative joint disease, lumbar spine is denied." Tr. 38-39, 237-38. In order to demonstrate entitlement to VA benefits for a disability claimed to have originated during peacetime active military service, a veteran must show that the disability resulted from either an "injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty."[7] 38 U.S.C. § 331 (1988). Here, Plaintiff was denied service connection for degenerative joint disease in his lumbar spine because the VA "did not find a link between [Plaintiff's] . . . medical condition and military service[,]" as the "first instance of this [condition] is well after [Plaintiff's] discharge from military service." Tr. 240. Therefore, because the VA's determination was based, at least in large part, to Plaintiff's inability to link his condition with military service and not because the condition was not disabling, the undersigned cannot conclude that the ALJ's reason for discounting Dr. Kendrick's opinion was based on good cause.

Finally, the ALJ reasoned that Dr. Kendrick's opinion should be discounted because during a visit with Dr. Patel on October 27, 2014, Plaintiff indicated that he was currently employed as a history teacher in Elmore County. Tr. 820. The note within the treatment record reads as follows, with no alteration: "work. history teacher in elmore school. ex-state trooper in the past." Tr. 820. While Dr. Patel's comment could indeed be interpreted as Plaintiff's admission that he was employed as a substitute teacher at that time, Plaintiff's

---

[7] The evidence does not indicate that Plaintiff claims his back problems occurred as a result of active military service. Plaintiff testified that his leg problems, for which the VA determined a thirty percent rating, are the result of coming into contact with an active grenade, Tr. 57-58, 70-71, but the undersigned finds no similar assertion regarding Plaintiff's degenerative joint disease in his lower spine.

14

testimony at the hearing before the ALJ contradicts this conclusion. Tr. 54-55. Thus, because there is strong evidence contradicting the ALJ's interpretation, the undersigned cannot conclude that the ALJ's reason for discounting Dr. Kendrick's opinion is based on good cause.

The ALJ's discount of Plaintiff's treating physician, Dr. Kendrick, is also concerning considering the ALJ's treatment of a Dr. Marcus Whitman's report. Dr. Whitman, a state agency physician, reviewed the medical and other evidence in Plaintiff's record on December 16, 2013, and concluded that Plaintiff could perform past relevant work despite his limitations. Tr. 89-92. In affording Dr. Whitman significant weight, the ALJ reasoned as follows, in its entirety:

> [Dr. Whitman] concluded the claimant could perform work activity at the light grade with several postural and environmental limitations[.] The [ALJ] also generally concurs with Dr. Whitman and his assessment is directly reflected in the undersigned's assessment of the claimant's residual functional capacity.

Tr. 38. Considering that Dr. Whitman's opinion, as a non-treating, non-examining physician, conflicts with the opinions of two treating physicians—Dr. Russell and Dr. Kendrick—and considering that the ALJ's cursory explanation for affording Dr. Whitman's opinion significant weight, the undersigned is particularly concerned as to the ALJ's discount of Dr. Kendrick's opinion.

In conclusion, the undersigned finds that the ALJ did not articulate good cause to discount the opinion of treating physician, Dr. Kendrick. Accordingly, this case is due to be remanded back to the ALJ. On remand, if the ALJ decides to discount Dr. Kendrick's

medical opinion, adequate reasons supported by substantial evidence should be clearly stated.

### B. The Undersigned Will Not Address Plaintiff's Remaining Arguments.

Because the undersigned concludes that the ALJ erred in his treatment of the opinion of Plaintiff's treating physician, Dr. Kendrick, and that the case must be remanded to the ALJ to either afford Dr. Kendrick's opinion significant weight or articulate good cause otherwise, the undersigned will not address Plaintiff's remaining arguments.[8]

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this matter is REMANDED back to the Commissioner. A separate judgment will issue.

Done this 19th day of April, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[8] Notably, the new regulations, which are effective as of March 27, 2017, dispose of the "treating source rule," which requires the ALJ to give the treating physician significant weight or to provide good cause for discounting the physician's opinion. However, the new regulations also state that the rule change applies only to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819, at *5853. Plaintiff's claim was filed on August 21, 2013. Thus, when before the ALJ on remand, the ALJ should apply the regulations as they were in force at the time Plaintiff's claim was filed.